In re Sandra Lyn AKRIDGE, Debtor.

COMMUNICATIONS WORKERS OF
AMERICA, LOCAL NO. 11500,
AFL–CIO, Plaintiff,

v.

Sandra Lyn AKRIDGE, Defendant.

Bankruptcy No. 85–00019–P7.
Adv. No. C85–0557–M7.

United States Bankruptcy Court,
S.D. California.

March 10, 1987.

Lewis N. Levy, Levy, Goldman, Greenstone & Hubel, Los Angeles, Cal., for plaintiff.

John A. Delisi, Law Offices of Ronald J. Pullen, San Diego, Cal., for defendant.

## OPINION

JAMES W. MEYERS, Bankruptcy Judge.

### I

The sole issue in this case is whether a union fine imposed upon a member for strikebreaking activity should be excepted from discharge under Section 523(a)(6) of the Bankruptcy Code ("Code"). This Court holds that a union fine is dischargeable. In addition, we impose sanctions on the plaintiff under Bankruptcy Rule 9011.

### II

### FACTS

Sandra Lyn Akridge, the "Debtor", is the mother of two children who in 1983 were five and twelve years of age. She is divorced and receives no spousal support. Since child support amounts to only $100 a month, the Debtor is compelled to provide for her family. A loss of regular employment, even for a short period of time, would be a significant economic hardship. The Debtor, in a declaration, stated she is often behind in paying bills and can barely meet her daily living expenses.[1]

To support her family, the Debtor works for Pacific Bell Telephone Company ("Pacific Bell"). In order to hold her position, she is required to be a member of the Communications Workers of America ("CWA"). Local 11500 ("Union") of the CWA has represented employees of Pacific Bell both before and after divestiture. The then existing collective bargaining agreement expired on August 6, 1983. On August 7, when the parties were unable to reach a new agreement, the Local went on strike until August 27, 1983.

Prior to this strike the Executive Board of the Local decided that the provisions of the CWA Constitution making strikebreaking a punishable offense would be enforced in the event of a strike. This decision was the result of substantial pressure from union members who resented those members who had failed to honor the picket line in a 1980 strike.

Prior to the strike, the Debtor had informed Ms. Marty Church, the Local's representative, that given her economic conditions, the Debtor could strike for only three days before returning to work. There is some controversy over the exact wording

---

1. Although this Court was not provided with the exact salary of the Debtor in 1983, it appears that she was earning approximately $30,000 annually.

of Ms. Church's response.[2] Ms. Church has sworn in her declaration that she said "Do what you have to do and the Union will do what it has to." For purposes of summary judgment we do not construe these remarks as a waiver.

After three days of striking, the Debtor returned to work for Pacific Bell. During 17 days of strikebreaking, she earned $2,909.12 which she used for the support of her family.

Article IX, Section 1 of the CWA Constitution authorizes the CWA Local to fine, suspend or expel members who work in an establishment against which a strike is directed. A committee selected by the Executive Board of the Union tried those members who worked during the strike. Approximately 490 members were fined. The penalty imposed on each was the amount of wages earned by strikebreaking plus $100. The Union is currently attempting to collect these fines from all who will not pay.

After her trial, on February 21, 1984, the Debtor was fined $3,009.12. The Debtor did not utilize the Union's appeals procedure. Instead, she refused to pay. The Union filed a complaint in Municipal Court to collect this fine on November 15, 1984. On January 3, 1985, the Debtor filed under Chapter 7. The Union then instituted this adversary proceeding to determine whether its fine is nondischargeable under Section 523(a)(6) of the Code. Both parties have moved for summary judgment.

### III

### DISCUSSION

#### A. *Dischargeability*

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *In re Stuerke*, 61 B.R. 623, 625 (9th Cir. BAP 1986). At oral argument both sides agreed that there is no material question of fact, only one of law.

The Debtor contends that the fine incurred by strikebreaking is simply an unsecured debt which, like any other breach of contract, is fully dischargeable. The Union contends that under labor law and California law a union fine for strikebreaking is nonreviewable by other courts. Further, the Union contends that this debt is nondischargeable because strikebreaking is a willful and malicious injury under Section 523(a)(6) of the Code.

Misapprehending the true nature of this question, the Union devotes a good portion of its brief to an analysis of labor and other non-bankruptcy law. Regardless of the importance of deterring strikebreaking, bankruptcy law, not labor law, governs this question. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522, 529 n. 9, 104 S.Ct. 1188, 1194, 1197 n. 9, 79 L.Ed.2d 482 (1984).

Congress has set the standard for determining the dischargeability of a debt. Section 523(a)(6) states that a "willful and malicious" injury by the debtor to another or another's property is nondischargeable. The Ninth Circuit has interpreted this to mean that when a wrongful act such as conversion, done intentionally, necessarily produces harm and is without cause or excuse, it is willful and malicious even absent proof of a specific intent to injure. *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir. 1985). Similarly, the Fifth Circuit has defined "willful and malicious" to mean intentional without a just cause or excuse. *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 245 (5th Cir.1983). Thus, for a debt to be nondischargeable it must stem from a wrongful act that is without excuse.

A primary purpose of bankruptcy is to give debtors a fresh start by discharging their debts. *In re Devers*, 759 F.2d 751, 754–55 (9th Cir.1985); *In re Mendoza*, 16 B.R. 990, 993 (S.Cal.1982); H.Rep. No. 95–595, 95th Cong. 1st Sess. 365 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6089.

---

**2.** The Debtor alleges that Ms. Church stated "do as much as you can do" and "three days are as much as we can ask." Both parties admitted in oral argument that this controversy does not give rise to a material fact that would deny summary judgment.

■ Exceptions to discharge are to be construed strictly against creditors and liberally in favor of debtors. *In re Klapp,* 706 F.2d 998, 999 (9th Cir.1983); *In re Stephens,* 51 B.R. 591, 595 (9th Cir. BAP 1985). Exceptions to discharge are limited to those clearly expressed in the Code. *See In re Mendoza, supra,* 16 B.R. at 993. Bankruptcy courts are not free to expand these exceptions on policy grounds in order to promote the discouragement of strikebreaking. Labor law considerations do not govern in bankruptcy court. *NLRB v. Bildisco & Bildisco, supra,* 465 U.S. at 522, 104 S.Ct. at 1194.

The essence of the Union's claim is that the Debtor breached her contract with the Union by returning to work. *Machinists v. Gonzales,* 356 U.S. 617, 618, 78 S.Ct. 923, 924, 2 L.Ed.2d 1018 (1958). The Union admits in its brief that it has no power to prevent non-members from strikebreaking nor can it prevent members from resigning from the Union and then strikebreaking. This is because the Union's power to fine stems from breach of contract. *NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 182, 87 S.Ct. 2001, 2007, 18 L.Ed.2d 1123 (1967).

The Union's argument that an intentional breach of contract is non-dischargeable is too broad. Debtors routinely breach contracts since they lack the financial resources to perform. Further, many contracts are breached by their terms upon the debtor's insolvency or upon the filing of the petition. Chapter 7 debtors in particular are often burdened by onerous contracts and need to reject them. If intentionally breached contracts were held to create non-dischargeable debts, few debtors could ever get a fresh start. Charge card debt, bank loans, mortgages, car loans and household finance loans would all be routinely nondischargeable.

■ Debts which are excepted from discharge under Section 523(a)(6) relate solely to tortious liabilities and not to debts stemming from breach of contract. *In re Moultrie,* 51 B.R. 368, 373 (W.Wash.1985); *Matter of Brazington,* 3 B.R. 309, 311 (Idaho 1980); *In re Howard,* 6 B.R. 256, 258 (M.Fla.1980); *Matter of Haynes,* 19 B.R.

849, 852 (E.Mich.1982); *see also Clair v. Colmes,* 245 Mass. 281, 139 N.E. 519, 520 (Mass.S.Ct.1923) (interpreting the Bankruptcy Act). Generally, debts stemming from breaches of contract are not excepted from discharge. *Matter of Haynes, supra,* 19 B.R. at 852. An unfavorable contract can be rejected under Section 365(a) on the sole ground that the rejection is a reasonable exercise of the debtor's business judgment. 19 B.R. at 852. However, this Court notes that in some cases a breach of contract may amount to an independent tort that can be excepted from discharge under Section 523(a)(6).

■ Here it cannot be seriously argued that the Debtor committed a tort, given the Debtor's three-day participation in the strike and her economic circumstances. She did not violate any covenant of good faith and fair dealing. It is clear that she dealt in good faith. Further, she informed the Union of her course of action in advance.

This Court holds that breaching a labor contract by returning to work during a strike may be willful but it is not malicious or wrongful. Thus, Section 523(a)(6) does not render the Union's fine nondischargeable.

### B. *Sanctions*

■ Rule 11 of the Fed.R.Civ.Proc. has been adopted in large part as Bankruptcy Rule 9011. *See Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584, 585 (3d Cir. 1985). We look to authorities under Rule 11 for guidance in applying Bankruptcy Rule 9011. Rule 11 requires parties and their counsel to look into the state of the law before making arguments to the court and to offer only those arguments that are supported by the law or a reasonable argument to change the law. *Smith v. United Transp. Union Local No. 81,* 594 F.Supp. 96, 100 (S.Cal.1984).

This minimal standard of practice has not been met by the Union in this case. Rule 11 no longer requires any subjective standard of bad faith. *In re TCI Ltd.,* 769 F.2d 441, 445 (7th Cir.1985). The test is simply

one of reasonableness. *Zuniga v. United Can Company*, 812 F.2d 443, 452 (9th Cir. March 6, 1987), Case No. 85–2013, slip op. at 19; *In re Ronco, Inc.*, 105 F.R.D. 493, 495 (N.D.Ill.1985). The contentions advanced by the Union cannot be characterized as warranted by existing law since they rely, for the most part, upon labor law cases wholly inapplicable to bankruptcy proceedings such as the one in issue. *See Smith v. United Transp. Union Local No. 81, supra*, 594 F.Supp. at 100. It should be noted that the Union filed more than one brief in this proceeding. Each brief was virtually a copy of the last. No brief was devoted primarily to an analysis of the Code or of the cases decided under it. 594 F.Supp. at 101.

■ At the oral argument the Union's counsel admitted that this proceeding was brought as a test case. In this circumstance, it is hard to avoid the conclusion that this complaint was brought to harass this Debtor and the other union members like her who worked during the 1983 strike. The Union ignored the arguments in the Debtor's brief and raised wholly irrelevant ones based upon labor law cases. The argument that the Debtor must first exhaust her administrative remedies within the Union before she can file bankruptcy and discharge her debt to the Union is particularly frivolous and without precedential support under the Code. Consequently, this Court must find that this proceeding was brought to harass the Debtor. Further, the Union ignored clear precedents that Section 523(a)(6) does not prevent the discharge of debts arising from breach of contract.

■ Under Rule 11 this Court can impose attorneys' fees and costs upon the Union, their counsel, or both. This Court imposes sanctions solely upon the Union, not their counsel. Rule 11 directs that sanctions should fall upon the person or entity responsible for the offending pleadings. *Chevron, U.S.A. v. Hand*, 763 F.2d 1184, 1187 (10th Cir.1985). The Union sought a test case to harass the Debtor and must be held responsible for this violation of Bankruptcy Rule 9011.

The attorney for the Debtor is directed to prepare and submit an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof and a detailed application for attorneys' fees and costs that the Debtor has suffered in responding to this action.